Szczesiak v Ery Tenant LLC (2026 NY Slip Op 00600)

Szczesiak v Ery Tenant LLC

2026 NY Slip Op 00600

Decided on February 05, 2026

Appellate Division, First Department

Mendez, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 05, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Barbara R. Kapnick Manuel Mendez Martin Shulman Shlomo S. Hagler

Index No. 153101/20|Appeal No. 5311|Case No. 2024-05946|

[*1]Mikolaj Szczesiak, Plaintiff-Appellant,
vEry Tenant LLC, et al., Defendants-Respondents, Tishman Construction Corporation, Defendant.

Plaintiff appeals from an order of the Supreme Court, New York County (Paul A. Goetz, J.), entered on or about September 6, 2024, which denied his motion for summary judgment on liability on his Labor Law § 240(1) cause of action.

Block O'Toole & Murphy, LLP, New York (David L. Scher and Christina R. Mercado of counsel), for appellant.
Cipriani & Werner, PC, Huntington (Sean Hutchinson and Catherine R. Everett of counsel), for respondents.

Mendez, J. 

Plaintiff an electrician, was injured at a construction site on September 11, 2019, when he fell from a 10-foot A-frame ladder as he was troubleshooting nonfunctioning ceiling lights. He alleges, among other things, that defendants - the owner of the building, the lessee of the space where plaintiff was working and its agent, and the general contractor - violated Labor Law § 240(1).
On the day of the accident, after being directed by his employer, nonparty electrical subcontractor Crana Electric Inc., to work on the lighting on the 11th floor, plaintiff went in search of a ladder that would enable him to reach the lighting controls inside an access-panel 11 feet above the ground. The only suitable ladder he could find was an old 10-foot fiberglass A-frame ladder, as all the other available ladders provided by Crana were too short. Plaintiff set up the seemingly stable ladder in the work area and went up and down it a few times as he checked the electrical power with a voltmeter and shut off specific circuit breakers that delivered electricity to the area where he was to work. He shut off only specific circuit breakers because he was instructed by his employer not to shut off the electricity for the entire floor.
Plaintiff, who is six feet tall, stood on the ladder's third rung from the top, and had approximately two feet of his upper body inside the hatch and access panel while working on the lighting controls. He had been working on a low-voltage control for 15 to 20 minutes when he received an electric shock to his right hand lasting less than three seconds. He removed his hand from the wires and the ladder immediately "moved, wobbled, shifted, and fell," causing him to fall backwards. He did not grab or pull down the ladder after he was shocked. His whole body landed on the floor. Plaintiff did not sustain burn injuries from the electric shock and never lost consciousness. At the accident scene he told the general contractor's superintendent that the ladder moved before he fell. The accident report prepared on the day of the accident, by the superintendent specifically noted, "plaintiff stated he felt the ladder move while he was on it and fell backwards."
At his deposition, plaintiff identified the ladder that caused his fall from photographs taken by a coworker, pointing out defects in the ladder depicted in the photographs, which showed it had two bent and curved crossbeams and worn rubber feet. Plaintiff testified that although a scaffold would have been ideal, scaffolds were provided only when the area where the work was to be performed had a floor-to-ceiling height greater than 11 feet, or if the work was expected to require a long period of time to complete.
The general contractor's project manager and corporate safety manager separately testified that a Baker scaffold could have been used instead of a ladder to reach the inside of the access panel, and that these devices would have protected plaintiff from falling. The project manager testified that workers typically used ladders to access the panel, but that a scaffold would have been safer. The corporate safety manager testified that if he noticed a worker at the jobsite using an A-frame ladder in the condition depicted in the photographs produced at plaintiff's deposition, he would have instructed that the ladder be replaced and taken out of service.
Plaintiff moved for summary judgment on liability pursuant to Labor Law § 240(1). He argued that he was exposed to a height-related risk when he performed work on an unsecured and defective ladder 11 feet above ground and that the ladder, which moved, wobbled, shifted and fell, was an inadequate safety device. Plaintiff further argued that defendants should have provided him with either a Baker scaffold or scissor lift with railings, which would have prevented him from falling and protected him in the course of his work.
In support of the motion plaintiff submitted his deposition testimony, that of the general contractor's two witnesses, and the expert report of Herbert Heller, Jr., P.E., a licensed professional engineer. Heller opined to "a reasonable degree of construction site safety and engineering certainty," that, based on his review of the sworn deposition testimony, exhibits, photographs, and defense documents, the 10-foot A-frame ladder was not adequate for the task plaintiff was performing and was a direct and proximate cause of the accident. He stated that a Baker scaffold or scissor lift with railings would have been adequate safety devices that would have prevented the gravity-related risk to which plaintiff was exposed, because there was no evidence that the electrical shock he received was strong enough to have thrown him over the railing of either a scaffold or lift.
Defendants opposed the motion, arguing that merely falling from a ladder does not establish a violation of Labor Law § 240(1). They alleged that the ladder was secure and did not require any tethering, and that it was only tipped over because when plaintiff was shocked he lost his balance, and as he fell he reached for the ladder and pulled it over. They further alleged that there are questions of fact as to whether the ladder provided proper protection that should be resolved by a jury.
Defendants submitted the affidavit of Edgar Chavez, plaintiff's foreman, who stated that he arrived at the scene of the accident after plaintiff fell and noticed that electricity to the area where plaintiff had been working had not been turned off. He found exposed spliced wires inside the access panel and determined that plaintiff had been working with "live electric."
Defendants also provided the affidavit of Angela Levitan, Ph.D., an expert in industrial and systems engineering. Levitan did not physically inspect the ladder but reviewed the records, exhibits, deposition transcripts, and photographs of the ladder produced at plaintiff's deposition, and performed an inspection of the accident location more than four years after the accident. She stated that the ladder did not fail and that it was not broken after the fall and opined that in accordance with Newton's laws of motion the A-frame ladder would not have moved without an external force beyond gravity. She concluded that "if the ladder tipped over, it was because plaintiff applied a lateral (i.e. horizontal) force to the ladder," and that a scissor lift or Baker scaffold without a guardrail would not have changed the outcome or have been practical given the nature of plaintiff's work.
Supreme Court denied plaintiff's motion, finding that by submitting the affidavit of plaintiff's foreman, stating that the wires were live after employees had been instructed to turn off the electricity, defendants created an issue of fact as to whether plaintiff was the sole proximate cause of the accident.
Labor Law § 240(1) is designed to protect workers against harm directly flowing from the application of the force of gravity to an object or person. However, an accident alone is insufficient to establish a violation of Labor Law § 240(1). For example, when a worker falls from a ladder after receiving an electric shock, to be entitled to the protections of Labor Law § 240(1), he must establish that the ladder was defective, or that "the ladder failed to provide proper protection," in order to establish a violation of Labor Law § 240(1) (Cutaia v Board of Mgrs. of the 160/170 Varick Street Condominium, 38 NY3d 1037, 1039 [2022] [internal quotation marks omitted]). Still, as this Court observed in Cutaia, and the dissent in this Court agreed, the intent is not to carve out from the protection of section 240(1) of the Labor Law all elevation-related falls following electrical shocks (see Cutaia v Board of Mgrs. of the Varick Street Condominium, 172 AD3d 424, 426, 429-430 [1stDept 2019], revd, 38 NY3d 1037 [2022]).
In any event, the statute applies here because the ladder was defective. Plaintiff's deposition testimony and the photographs provided clearly demonstrate that the ladder, which was the only one available for the work plaintiff was required to perform, had two bent and curved crossbeams and worn rubber feet. The general contractor's corporate safety manager confirmed that the ladder was defective when he stated at his deposition that if he had observed a ladder with the damage depicted in the photographs, he would have replaced the ladder and taken it out of service.
Even if the ladder had been stable, this would have been no impediment to a claim under section 240 (see Rodas-Garcia v NYC United LLC, 225 AD3d 556, 556 [1st Dept 2024]; Pinzon v Royal Charter Props., Inc., 211 AD3d 442, 443 [1st Dept 2022] [that plaintiff inspected the ladder and found it in good order before using it, was irrelevant to making a prima face case on the Labor Law § 240(1) claim]). Plaintiff submitted evidence that the ladder was an inadequate safety device because it failed to provide adequate protection against the gravity-related risk inherent in the work he was performing. Plaintiff testified that when he removed his hand from the wires that shocked him, the ladder immediately "moved, wobbled and shifted," establishing that it failed to adequately support and protect him from the gravity-related risk (see DelRosario v United Nations Fed. Credit Union, 104 AD3d 515, 515 [1st Dept 2013][ladder provided to plaintiff who was struck by live, energized wire was inadequate to the task of preventing his fall and was the proximate cause of his injury, because it wobbled and moved when plaintiff pulled away from the wire, causing plaintiff to lose his balance and fall]; see also Daniello v J.T. Magen & Co., Inc., 239 AD3d 516, 516-517 [1st Dept 2025] [plaintiff entitled to summary judgment pursuant to Labor Law § 240(1) after falling from an unsecured A-frame ladder while performing overhead work when the ladder "wiggled" after plaintiff was "jolted" by a falling tile]; Lopez v 18-20 Park 84 Corp., 235 AD3d 591, 592 [1st Dept 2025][plaintiff's testimony that the ladder moved for no apparent reason established that the ladder proved to be inadequate as a safety device]; Nunez v SY Prospect LLC, 226 AD3d 410 [1st Dept 2024]). Plaintiff testified that he was instructed by his employer not to shut off all the electricity. At most, his failure to completely turn off the electricity to the area he was working in constituted comparative negligence, which is not a defense to a Labor Law
§ 240(1) claim (see Begnoja v Hudson Riv. Park Trust, 238 AD3d 481, 482 [1st Dept 2025]; Rodas-Garcia, 225 AD3d at 556 [whether plaintiff lost his balance and fell off ladder while reaching overhead instead of repositioning ladder amounts to comparative negligence]). Additionally, plaintiff's expert opined that the ladder was inadequate and identified other safety devices, such as a Baker scaffold or scissor lift with railings, that would have protected plaintiff and prevented his fall. He further opined that there was no evidence that plaintiff was exposed to a substantial shock that would have thrown him over the railing of a scaffold or lift. Finally, the general contractor's two witnesses testified at their depositions that either a Baker scaffold or scissor lift with a railing could have prevented plaintiff's fall. Defendants' expert's report was conclusory and speculative, and it failed to raise any issues of fact. The expert inspected the accident location four years after the accident, and after all electrical work had been completed (see Tuzzolino v Consolidated Edison Co. of New York, 160 AD3d 568, 568 [1st Dept 2018]). She did not physically inspect the ladder and failed to address in her report the defects in the ladder's bent crossbeams and worn rubber feet (see Rivera v 7132 Fifth Ave. Owner LP, 229 AD3d 401, 403 [1st Dept 2024][expert's assertion, after failing to inspect ladder, that the ladder was not defective and the fall was caused by plaintiff, was mere conjecture and insufficient to rebut plaintiff's testimony]). Her report failed to cite to evidence in the record to support her theory that plaintiff fell after being shocked when he pulled down the ladder as he fell with lateral force (Suazo v 501 Madison-Sutton LLC, 235 AD3d 513 [1st Dept 2025]). Plaintiff's deposition testimony that he did not hold onto the ladder or pull on the ladder to cause it to fall after he was shocked contradicts defendants' expert's theory and is supported by the accident report prepared by the general contractor's superintendent which specifically noted that "[plaintiff] stated he felt the ladder move while he was on it and fell backwards . . ." (emphasis added).
Finally, defendants' expert's opinion that a scissor lift or Baker scaffold would not have changed the outcome was contradicted by the deposition testimony of the general contractor's witnesses and by plaintiff's expert, and also failed to raise any questions of fact (see Hernandez v Port Auth. of N.Y. & N.J., 241 AD3d 1069, 1071 [1st Dept 2025]). That plaintiff was shocked by a live wire did not raise issues of fact because plaintiff was not propelled from the ladder by the electric shock. Recent decisions from the Court of Appeals relied on by the defendants, Nazario v 222 Broadway, LLC (28 NY3d 1054 [2016]) and Cutaia v Board of Mgrs. of the 160/170 Varick Street Condomimium (38 NY3d 1037 [2022]) in which the plaintiffs were propelled from the ladder by an electric shock, are distinguishable.
In Nazario, the plaintiff was standing on an open A-frame wooden ladder when he received an electric shock that threw him to the floor while still holding onto the ladder, which fell on top of him. The record in Nazario does not contain any evidence that the ladder was defective or that it moved or wobbled before he was thrown from the ladder by the electric shock. The Court of Appeals determined that questions of fact existed "as to whether the ladder failed to provide proper protection, and whether plaintiff should have been provided with additional safety devices" (Nazario, 28 NY3d at 1055).
In Cutaia, the plaintiff, while working near electrical wires, leaned a closed unlocked A-frame ladder against the wall due to a lack of space, and received an electrical shock that threw him off the ladder. The electrical shock caused burns to his left hand and left torso. He was thrown to the ground and did not remember anything about the fall or its cause (Cutaia, 38 NY3d at 1038-1039). The record in Cutaia does not contain any evidence that the ladder was defective or that it moved or wobbled before the plaintiff was thrown from the ladder by the electric shock.
Similarly, this Court's decisions in Higgins v TST 375 Hudson, L.L.C. (179 AD3d 508 [1st Dept 2020]) and Rosa v 47 E. 34th St. [NY], L.P. (208 AD3d 1075 [1st Dept 2022]) involved plaintiffs who were thrown from open A-frame ladders after receiving shocks that caused severe burns. In Higgins, the plaintiff was shocked after coming in contact with a live electrical junction box. According to the record in Higgins, the defendant's expert master electrician opined that the pressure exerted by the arc would be "like being blasted by a fire hose" and it was likely that the force imposed on plaintiff would cause him to fall regardless of the device used. This Court determined that questions of fact existed as to whether another safety device could have prevented plaintiff's fall (Higgins, 179 AD3d at 510).
In Rosa, there was an electrical arc explosion that threw the plaintiff off the ladder, causing a partial power outage in a 36 story building, severely burning the plaintiff who later died from his injuries. This Court determined that issues of fact existed "as to whether the ladder failed to provide proper protection, and whether Rosa should have been provided with additional safety devices." (Rosa, 208 AD3d at 1080 [internal quotation marks and brackets omitted]). The records in Higgins and in Rosa do not contain any evidence that the ladders in those cases were defective or that they moved or wobbled before the plaintiffs were thrown from them.
Here, in contrast to Cutaia, Nazario, Higgins, or Rosa, plaintiff, the sole witness to the accident, remained conscious after the electric shock, and recalled and specifically testified that the electric shock did not cause his fall. He testified repeatedly that he removed his hand from the wires and that the ladder he was standing on, "moved," "wobbled," "shifted," and fell (see DelRosario, 104 AD3d at 515). Plaintiff also testified that he did not hold onto or pull down the ladder. He fell backwards and the ladder did not fall on top of him. Moreover, unlike Nazario, Cutaia, Higgins, and Rosa, the ladder plaintiff was provided with was clearly defective, as testified to by plaintiff and the general contractor's corporate safety manager, and as illustrated in the photographs used at plaintiff's deposition.
Plaintiff's expert opined that given the mild shock to plaintiff's hand, there were adequate alternative safety devices in the form of a Baker scaffold or scissor lift with railings that would have prevented plaintiff's fall. This was confirmed by general contractor's witnesses. Unlike Nazario, Cutaia, Higgins, and Rosa, in this case the proximate cause of the accident was the defective ladder, not the electric shock. Plaintiff established a prima facie basis to obtain summary judgment on the Labor Law § 240(1) claim, and defendants failed to raise an issue of fact.
Accordingly, the order of the Supreme Court, New York County (Paul A. Goetz, J.), entered on or about September 6, 2024, which denied plaintiff's motion for summary judgment on liability on his Labor Law § 240(1) cause of action, should be reversed, without costs, and the motion granted.
Order, Supreme Court, New York County (Paul A. Goetz, J.), entered on or about September 6, 2024, reversed, without costs, and the motion granted.
Opinion by Mendez, J. All concur.
Moulton, J.P., Kapnick, Mendez, Shulman, Hagler, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 5, 2026